IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CEDRIC D. BURKS,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:07-CR-173-TS |

On April 28, 2010, a jury convicted Defendant Cedric D. Burks of transportation of a stolen vehicle in interstate commerce and sale or receipt of a stolen vehicle (in violation of 18 U.S.C. §§ 2312, 2313, and 2 (aiding and abetting)). Although Mr. Burks has been sentenced, the question of what amount of restitution he owes is disputed by the parties and must now be resolved by the court.

The restitution dispute centers around the value of a Cadillac Escalade SUV tied to the criminal activities of Mr. Burks and his Co-Defendants and how much of that value, if any, Mr. Burks must pay to the victims. The United States seeks an order requiring Mr. Burks to pay $50,977.00 in restitution to victims B.P. (original owner of the SUV) and B.P.'s auto insurer, American National Property and Casualty Company. Mr. Burks disputes the amount sought by the government.

The parties briefed the issue, and the court held a hearing on November 16, 2010, to hear evidence and argument. For the reasons set forth below, the court, pursuant to 18 U.S.C.

§ 3663A, holds in favor of the United States and orders Mr. Burks to pay $50,977.00 in restitution (as set forth in more detail below).

**BACKGROUND**

In April 2005, the 2004 Cadillac Escalade ESV (VIN # 3GYFK66N14G257612) at issue here ("SUV") was stolen in Las Vegas, Nevada. In April 2006, law enforcement recovered the SUV in Salt Lake City, Utah, from Mr. Burks's Co-Defendants Abraham Elliott and Caesar Martinez (Mr. Burks never had actual possession of the SUV).

The Defendants, including Mr. Burks, were charged with running an auto theft ring. The SUV had been stripped of its parts and later reassembled to unknown standards by persons of unknown skill (apparently members of the auto theft ring) using parts of uncertain provenance.

In April 2006, the government placed the seized SUV in storage with the Utah Motor Vehicle Enforcement Division (UMVED). UMVED stored the SUV until July 7, 2010, when the U.S. Marshals took possession of the SUV as part of ongoing forfeiture proceedings under 18 U.S.C. § 981(a)(1)(F) (Case No. 2:10-CV-625-TC).[1]

The SUV is not in a condition that would allow the State of Nevada or the State of Utah to issue a valid title for it. Nevada has issued a Certificate of Non-Repairable Vehicle for the SUV. By its terms, the Certificate is not a title and only allows the SUV to be used and sold as

---

[1] Mr. Burks protests the fact that the SUV was in storage for four years, purportedly depreciating in value when it could have been returned to the insurance company immediately upon recovery and supposedly resold for a much higher amount. But the SUV was potential evidence in a criminal prosecution, and it is reasonable to expect that the government would keep the impounded SUV until those proceedings (i.e., the prosecution of Mr. Burks and his Co-Defendants) were resolved. Mr. Burks essentially makes a "failure to mitigate damages" argument, which is unpersuasive and has no application in this restitution proceeding.

parts and scrap metal. Similarly, a representative of UMVED testified that, based on the known history of the SUV, the State of Utah would not issue a title for the SUV or certify its safety as a motor vehicle.[2] The U.S. Marshals plan to sell the SUV, through the separate forfeiture proceedings,[3] "as is." The value of the SUV is most likely limited to the value of its parts.[4]

After the SUV was stolen, the original owner of the SUV filed a claim with his automobile insurance company, American National Property and Casualty Company. Before the SUV was recovered, the claim had been processed. The owner paid a $1,000 deductible, and American National paid $49,977.00, for a total actual loss of $50,977.00.

Mr. Burks disputes the amount presented by the government and contends that the government's method of calculation is incorrect and unfairly prejudicial to him.

## ANALYSIS

The purpose of restitution is to make the victim whole. E.g., Unites States v. James, 564 F.3d 1237, 1246 (10th Cir. 2009). The parties do not dispute that the victims in this case are the

---

[2] Mr. Burks's unsupported contention that the government planned to use the SUV in its undercover operations makes no sense. The court takes judicial notice that a law enforcement agency would not allow its officers to drive an untitled, unlicensed, uncertified and uninsurable vehicle.

[3] Because the forfeiture proceedings are still pending, there is no guarantee that the sale will go forward as planned.

[4] In a separate agreement with Mr. Burks and his Co-Defendants, the U.S. Attorney's Office will deduct whatever amount of money the U.S. Marshals receive from auction of the "as is" SUV from the amount of restitution owed by the Defendants. But that agreement is separate from the amount of restitution jointly and severally owed by Mr. Burks under the restitution statute, 18 U.S.C. § 3663A. See United States v. McGlinty, 610 F.3d 1242, 1247-48 (10th Cir. 2010) (noting that criminal forfeiture and restitution are separate remedies with different purposes). Accordingly, the court, when determining the amount of restitution, will not consider any speculative value the U.S. Marshals may recover from sale of the SUV.

original SUV owner and the insurance company that paid the claim.

Restitution in this case is mandatory under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. The procedures for issuing an order of restitution are set forth in 18 U.S.C. § 3664. Generally speaking, the nature and amount of restitution is left to the court's discretion. See 18 U.S.C. § 3664(a) (noting that the court exercises its discretion in fashioning a restitution order). Nevertheless, the court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

Because this is a case that resulted in damage to and loss of property, Mr. Burks must make the victims whole in one of two ways: (1) returning the property to the owner; or (2) if return of the property is impossible, impracticable or inadequate, paying the victims an amount calculated based on criteria set forth in § 3663A. See 18 U.S.C. § 3663A(b)(1).

The first option—returning the property to the owner—is not appropriate here because returning the SUV to compensate the victims would be impracticable and inadequate. When the SUV was stolen, it was a year old and in good condition. When the SUV was recovered, it had been stripped and re-fitted with parts. The SUV was, and remains, ineligible for title in Nevada or Utah. The state of (and value of) the SUV is so diminished from the date it was stolen that to return it to the original owner or the insurance company for possession or resale would not make the victims whole.

Accordingly, the second option is the appropriate method for determining restitution to be paid by Mr. Burks. Based on criteria set forth in the restitution statute, the court determines the amount of restitution by subtracting the value of the property (if any) when it was returned from

the value of the property at the time of loss.[5]

Mr. Burks contends that the government's measure of restitution is not fairly calculated under the statute's formula.[6] He argues that the government's failure to immediately return the vehicle to the "rightful owner, i.e., American National Insurance"[7] after seizure in 2006 improperly prejudiced him by devaluing an asset that could have and should have been used to offset the insurance company's loss, i.e., requiring him to pay more restitution now than he would have paid if the SUV had been promptly returned to the insurance company, presumably for re-sale. To support his argument, he submitted a report from an automobile dealer who opined on the estimated values of the SUV over time since its purchase in 2004. (See Attachment 1 to Def.'s Final Mem. Re: Restitution (Docket No. 613).)

Mr. Burks's argument is problematic for at least four reasons. First, his argument is based on a fallacious assumption that the SUV had resale value as a fully-licensed, uncompromised vehicle at the time it was recovered by law enforcement. Second, Mr. Burks never owned the SUV so he has no right or ability to dictate transfer of the asset. Third, although the court makes no finding as to the automobile dealer's expertise, the court finds that the

---

[5] For the equation, the court selects the value at the time of loss because the value of the property at the time of sentencing is less. See 18 U.S.C. § 3663A(b)(B) (requiring payment equal to the greater of the property value at the time of loss or the value of the property at the time of sentencing less the value of any returned property). That is, at the time of sentencing, the SUV was worth only what a salvage sale would bring, as opposed to the necessarily higher value of a one-year-old SUV in good condition at the time it was stolen.

[6] In the alternative, Mr. Burks argued that the proper measure of restitution is zero because the SUV could and should have been returned to the owner in 2006. But the court rejects that argument because, as noted above, returning the SUV to the owner as a form of restitution would be impracticable and inadequate.

[7] Def.'s Response to Gov't Mem. Re: Restitution (Docket No. 605) at 3.

depreciation formula and the data upon which the expert's opinion is based, as well as his mathematical "conclusion" (the substance of the which is not entirely clear from the Defendant's papers), are speculative and based on an incorrect assumption of facts. And fourth, the insurance company already accounted for salvage sale income. (See U.S.'s Mem. Re: Restitution (Docket No. 598) at 5 (as documented by Attachments A and B).)

The court finds the government's calculation of the restitution amount to be reasonable and based on appropriate and ascertainable amounts. The original owner suffered a monetary loss of $1,000. The insurance company suffered a loss of $49,977.00. (See id.)

"[A] restitution order under the MVRA must be based on actual loss." United States v. Parker, 553 F.3d 1309, 1324 (10th Cir. 2009); see also James, 564 F.3d at 1246 (a court's reasonable determination of appropriate restitution should be "rooted in a calculation of actual loss"). There is no dispute that the actual loss of the two victims totaled $50,977.00. Payment of that amount to the two victims would make them whole. The government's proposal is a logical way to assess the SUV's value (and less speculative than Mr. Burks's suggested method).

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. Restitution in the amount of $50,977.00 is owed jointly and severally by Defendant Cedric Burks and Co-Defendants Nicholas Peck, Abraham Elliott, Levi Elliott, John Guerrero and Caesar Martinez (as already imposed by the Honorable Ted Stewart in this case, United States v. Peck (Case No. 2:07-CR-173-TS (D. Utah)). Restitution is due immediately.

2. Defendant Cedric Burks must make a minimum payment of $100.00 every month toward the total restitution amount he owes jointly and severally.

3. Pursuant to 18 U.S.C. § 3664(*i*), Mr. Burks's restitution payments shall be allocated first to B.P., the natural person victim, and then to the American National Property and Casualty Company, the corporate victim, after B.P. has been allocated the proper amount of restitution.

4. No payment of interest on the restitution amount is required.

5. If Mr. Burks fails to pay restitution as ordered, the court, pursuant to 18 U.S.C. § 3614, may re-sentence him to any sentence that originally may have been imposed in this case.

6. Mr. Burks shall notify the court and the Attorney General of any material change in Mr. Burks's economic circumstances that might affect his ability to pay restitution.

DATED this 19th day of November, 2010.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
Chief Judge